UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SIONE FAKALATA,<br><br>　　　　Petitioner,<br><br>vs.<br><br>LARRY SMALL, Warden,<br><br>　　　　Respondent. | Case No:  C 10-00370 SBA (pr)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS and DENYING CERTIFICATE OF APPEALIBILITY** |

## I.   INTRODUCTION

Now before the Court is Petitioner Sione Fakalata's pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 which seeks to challenge his 2001 conviction in San Mateo County Superior Court for first degree murder and other crimes. Respondent Warden Larry Small has filed an answer to the petition and Petitioner has filed a traverse. For the reasons discussed below, the petition is DENIED.

## II.   BACKGROUND

### A.   CASE HISTORY

On September 22, 2006, an amended information was filed in the San Mateo County Superior Court charging Petitioner with first degree murder under California Penal Code section 187(a), three counts of robbery under California Penal Code section 212.5(c), battery causing serious bodily injury under California Penal Code section 243(d) and attempted robbery under California Penal Code sections 664 and 212.5(c). Court Transcript (CT) at 677-682. On October 16, 2006, a jury acquitted Petitioner of battery causing serious bodily injury but found him guilty of the remaining charges. CT at 883; 891-99. The trial court sentenced Petitioner to an aggregate term of twenty-nine years and eight months-to-life in prison. CT at 993.

On November 26, 2007, Petitioner appealed his conviction in the California Court of Appeal on the ground that the prosecutor engaged in prejudicial misconduct during his cross-examination and closing argument. Resp.'s Exh. 4, People v. Fakalata, A116627 (Cal. Ct. App. Aug. 11, 2008). On August 11, 2008, the California Court of Appeal issued a written opinion in which it rejected Petitioner's arguments and affirmed the judgment. Resp.'s Exh. 6; Petition, Appendix F, Fakalata, A116627 at 8-9. On October 28, 2008, the California Supreme Court summarily denied the petition for review. Resp.'s Exh. 8.

On January 26, 2010, Petitioner filed the instant petition for a writ of habeas corpus, setting forth claims of prosecutorial misconduct based upon the prosecutor's improper cross-examination of Petitioner and improper remarks during his closing argument. On August 25, 2010, the Court issued an order to show cause why the writ should not be granted. On December 7, 2010, Respondent filed an answer, as well as a memorandum of points and authorities, and lodged a number of exhibits. On February 10, 2011, Petitioner filed a traverse. The matter is now fully briefed and is ready for review on the merits.

**B.   STATEMENT OF FACTS**

The following facts are taken from the state appellate court opinion on direct appeal:

> Sometime after midnight on December 22, 2002, five friends, Daniel Jesus, Miguel Martinez, Jose Martinez, Francisco Molina, and Domingo Huerta, (fn. 1) were gathered at a cul-de-sac on Garden Street in East Palo Alto drinking liquor to celebrate Jesus's 20th birthday. As they were in the midst of celebrating, four strangers approached them. The approaching strangers, who appeared to be of Tongan descent, were appellant, Remus Langi, Joe Ngaloafe and an unknown fourth man. Appellant and his companions had come from another party. The two groups began drinking and talking together in a friendly manner.
>
> fn 1: Although two of the victims have Martinez as their last name, they are not related. In the interest of clarity, we will refer to each of the victims by their first names. No disrespect is intended.
>
> As the two groups continued talking, Jose asked appellant if he knew someone named Ashley, who he described as a Tongan. This seemed to offend appellant. Appellant told Jose, "I'll knock you out, fool." Then almost immediately after saying this, appellant punched Jose in the face, knocking him to the ground. Jose tried to get up and was hit again. As he was on the ground, he felt more than one person going through his pockets.

Around this time, appellant's co-participant Langi punched Miguel, the 19-year-old murder victim, causing him to fall to the ground. Miguel fell onto his back, his head hit the pavement, and although he was unconscious, he continued to be beaten.

Daniel was also hit in the face, and he fell to the ground and lay on his side. He was kicked repeatedly in the back of his head, and he felt someone going through his pockets, taking his wallet and keys.

Domingo went to help Miguel, who was lying partially on the sidewalk and partially in the street. At some point, Domingo was hit on the right side of his face from behind. He staggered and then turned to see appellant. Appellant, who was joined by Langi, continued hitting Domingo in the face until he fell to the ground. He lay on his side, covering his face with both hands. They kicked him and stepped on his head with enough force that his face was cut by the concrete. At the same time, he felt his pockets being rummaged through, although nothing was taken.

Francisco was able to leave the area and call 911 emergency for police assistance. Officers responded to the scene, at which time appellant and his companions were leaving on foot. They were asked to stop and appellant and Langi complied. Ngaloafe did not initially comply, but he was stopped down the street by another officer. The fourth suspect was no longer in the area and has never been identified.

The responding officers recovered two sets of keys from Langi that belonged to the victims Jose and Miguel. Daniel's wallet and keys were found thrown over a fence on Garden Street, close to the cul-de-sac where the crime took place.

Miguel later died from brain swelling, which was caused by blunt head trauma. The autopsy revealed eight areas of blunt trauma to the head. He never regained consciousness after the attack and was kept on life support until December 25, 2002.

Appellant testified at trial. He did not dispute that he was present, that he participated in the fight, or that he told Jose, "I will knock you out, fool." He believed that Jose was "stereotyping towards my people" because he asked appellant if he knew his friend Ashley "the big Tongan." He denied that he had any intent to rob anyone and claimed he was unaware that any property had been taken.

During trial, the prosecution advanced a felony-murder theory. The prosecutor argued that appellant created a dispute in order to advance the commission of the robbery, which the evidence showed had been planned from the beginning, because without discussion "they all knew what to do and they all did it effectively and efficiently and violently and brutally . . ." In contrast, the defense asserted that Miguel died during a drunken brawl, triggered by a seemingly trivial slight, in which both sets of young men participated; and there was no advance plan to rob anyone.

- 3 -

Fakalata, A116626 at 1-3.

The record also shows that Petitioner admitted on cross-examination that his testimony about what occurred on December 22, 2002, was different from the version of events that he told the police after he was arrested. Reporter's Transcript (RT) at 923-41; 946-47; 950-51; 960; 962. Also, blood from the murder victim and one of the beating victims was found on Petitioner's clothing. RT at 701-02

## III. STANDARD OF REVIEW

The instant Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. Under AEDPA, a federal court cannot grant habeas relief with respect to any claim adjudicated on the merits in a state-court proceeding unless the proceeding "resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (emphasis added).

A state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (internal quotation marks omitted).

Relief under the "unreasonable application" clause is appropriate "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. Habeas petitioners bear the burden of showing that a state court's decision applied some Supreme Court precedent in an objectively unreasonable manner. Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam).

In determining whether a state court's decision is contrary to, or involves an unreasonable application of, clearly established federal law, courts in this Circuit look to the decision of the highest state court to address the merits of the petitioner's claim in a

reasoned decision.  See Ylst v. Nunnemaker, 501 U.S. 797, 803-804 (1991); LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000).[1]  Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

## IV. DISCUSSION

Petitioner claims that the prosecutor engaged in misconduct during cross-examination and closing argument and that the cumulative effect of this conduct constituted a violation of his Fourteenth Amendment Due Process right to a fair trial.  These claims are discussed seriatim.

### A. APPLICABLE LAW

A claim of prosecutorial misconduct is cognizable in federal habeas corpus proceedings.  The appropriate standard of review is the narrow one of due process and not the broad exercise of supervisory power.  Darden v. Wainwright, 477 U.S. 168, 181 (1986).  A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair."  Id.; Smith v. Phillips, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor").  Under Darden, the first issue is whether the prosecutor's remarks were improper; if so, the next question is whether such conduct infected the trial with unfairness.  Tan v. Runnels, 413 F.3d 1101, 1112 (9th Cir. 2005).  A prosecutorial misconduct claim is decided "'on the merits, examining the entire proceedings to determine whether the prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995) (citation omitted).

---

[1] Because the California Supreme Court summarily denied relief on Petitioner's claims, this Court looks to the California Court of Appeal's August 11, 2008 written decision denying Petitioner's direct appeal.

The first factor in determining if misconduct amounted to a violation of due process is whether the trial court issued a curative instruction. When a curative instruction is issued, a court presumes that the jury has disregarded inadmissible evidence and that no due process violation occurred. Greer v. Miller, 483 U.S. 756, 766 n.8 (1987); Darden, 477 U.S. at 182; Tan, 413 F.3d at 1115. This presumption may be overcome if there is an "overwhelming probability" that the jury would be unable to disregard evidence and a strong likelihood that the effect of the misconduct would be "devastating" to the defendant. Greer, 483 U.S. at 766 n.8.

Other factors which a court may take into account in determining whether misconduct rises to a level of due process violation are: (1) the weight of evidence of guilt, United States v. Young, 470 U.S. 1, 19 (1985); (2) whether the misconduct was isolated or part of an ongoing pattern, Lincoln v. Sunn, 807 F.2d 805, 809 (9th Cir. 1987); (3) whether the misconduct relates to a critical part of the case, Giglio v. United States, 405 U.S. 150, 154 (1972); and (4) whether a prosecutor's comment misstates or manipulates the evidence, Darden, 477 U.S. at 182.

**B.  ANALYSIS**

   **1.  Prosecutorial Misconduct—Cross-Examination**

Prior to trial, the court severed Petitioner's case from the case of Remus Langi, one of the other individuals involved in the events that took place on December 22, 2002. RT at 155. One of the reasons for the severance was to prevent the spillover prejudicial effect of Langi's prior juvenile record, in which he was found to have committed a robbery. Id.; People v. Fakalata, A116627 at 4. Petitioner claims that the prosecution improperly injected Langi's record into Petitioner's case by cross-examining Petitioner about his knowledge of Langi. Specifically, Petitioner objects to the following exchange during his cross-examination by the prosecutor:

| | | |
|---|---|---|
| Q: | And even though you don't remember Remus going to Tonga, do you remember any other time where he sort of disappeared for a while? |
| A: | No. |
| Q: | Did you know of anything that happened to him when he was at Menlo-Atherton, at the high school? |
| A: | No. |
| Q: | Were you aware that he had gone away from the high school for about nine months. |
| A: | No, I wasn't aware. |
| Q: | Remember him being out of circulation for nine months, let me give you the dates. |
| Defense: | For the record, I am objecting to the form of the question. |
| Court: | Sustained as to the form. |
| Prosecutor: | At the end of the year 2000, the beginning of 2001, do you remember Mr. Langi disappeared again for about nine months? |
| A: | I don't know nothing about that. |
| Q: | Do you remember, did you know that he had some trouble up in the juvenile court? |
| Defense: | Objection. Irrelevant. |
| Prosecutor: | Just for his knowledge. |
| Court: | Sustained at this point. |

RT at 918-19. At that juncture, the prosecutor asked to approach the bench, and the jury was dismissed. RT at 919. After hearing argument from the attorneys, the court sustained the defense objection, stating, "This is not an area of questioning that will be dealt with here." RT at 923. Later that day, counsel moved for a mistrial on the ground that the prosecutor's questions implied that the jury could find Petitioner guilty by association with Langi. RT at 967.

The trial court denied the motion for a mistrial and, at counsel's request, instructed the jury as follows:

> Nothing that the attorneys say is evidence. In their opening statements and closing arguments the attorneys will discuss the case, but their remarks are not evidence. Their questions are not evidence. Only the witness's answers are evidence. The attorneys' questions are significant only if they help you to understand the witness's answers. Do not assume that something is true just because an attorney asks a question that suggests it is true.

RT at 972. On appeal, Petitioner raised a claim based on improper questioning by the prosecutor. The California Court of Appeal denied this claim as follows:

> We must presume . . . that the trial court's admonition ameliorated whatever small prejudicial effect the prosecutor's questioning may have had. As a result of the trial court promptly sustaining defense counsel's objection, the prosecutor never had an opportunity to develop this line of questioning, so neither the prosecutor's questions nor appellant's responses conveyed any damaging information about Langi's criminal past to the jury.

Fakalata, A116627 at 7.

On federal habeas review, improper questioning of a witness by the prosecutor is not, standing alone, sufficient to warrant reversal. Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998). Rather, the relevant inquiry is "whether the prosecutor's behavior so infected the trial with unfairness as to make the resulting conviction a denial of due process." Id. (quoting Darden, 477 U.S. at 181). In considering whether the questioning deprived the defendant of a fair trial, the witness' testimony should be viewed as a whole to determine the impact of the improper questioning. Id. at 934-35.

Based on the record presented, it is clear that the prosecutor's questioning of Petitioner regarding his knowledge of the whereabouts of Remus Langi did not deprive Petitioner of a fair trial. First, this was a brief and isolated instance in the prosecutor's otherwise lengthy cross-examination of Petitioner. See RT 904-987. Second, the trial court sustained defense counsel's objection to the prosecutor's sole question about Langi's "trouble in juvenile hall," which, in turn, immediately extinguished this line of questioning

1 and minimized any prejudicial effect from the question. Thus, even if the prosecutor was
2 attempting improperly to put Langi's criminal record into evidence, he was prevented from
3 doing so. Third, because a jury is presumed to follow its instructions, see Greer, 483 U.S.
4 at 766 n.8, the trial court's admonition to the jury that "the attorneys' questions are not
5 evidence," rectified whatever marginal prejudice was created by the prosecutor's improper
6 question. Further, as discussed below, the prosecution's case against Petitioner was strong.
7 All these factors weigh against the finding of a due process violation. Therefore, the Court
8 finds that the state appellate court's denial this claim was not unreasonable under AEDPA.

### 2.   Prosecutorial Misconduct—Closing Argument

Petitioner claims that the prosecutor, during his closing argument, repeatedly implied that he possessed information, not disclosed to the jury, that the suspects had previously robbed and beaten people in the past. Petitioner cites the following sections of the prosecutor's closing argument:

> We talked in voir dire about the idea of corroboration. We talked about it with witnesses who were testifying. But it—the concept applies to crimes also in terms of knowing what the defendant intended and what the suspects intended, that they if they do it, and over and over and over again the same way, well, guess what, that's why they are doing it.
> . . .
>
> And then the instant that they're on the ground, the beating goes on and on and on, and property was taken from them. How does that happen? It is not just a random occurrence in the universe. There's a plan and an intention from these guys. This is what they do. They beat people to the ground, and they take stuff from them while they're doing it.
> . . .
>
> Now, what's—I put here is modus operandi. There's nothing in the instructions that you have about—it's a phrase in the law that talks about it's a plan. It's—it's in shorthand, there's an MO, how someone does something. They do it over and over again. It can apply to a lot of things, serial killers, killing the same way, people rob banks in certain ways. It becomes a pattern. I put that up there to, again, talk about the idea there were no instructions given here but they all knew what to do because they all did it together over and over and over again. It suggests a modus operandi, a way that they do things.
> . . .

- 9 -

> There's no real fight or battle or animosity with Danny Jesus or Miguel Martinez or Domingo Huerta except that it's a crime of opportunity that these three thugs took to beat and rob these guys for fun because they were angry because this is what they do.
>
> . . .
>
> So now it shifts and changes into something other than what it was, was the signal, the punch to start the beating and robbery because that's what these guys do. That's what they do over and over again like they practiced it a thousand times.

RT at 1053, 1061, 1068, 1069, 1074.

At this point, defense counsel objected on the ground that there was no evidence that pointed to a conspiracy. RT at 1074. The trial court agreed and instructed the jury: "Ladies and gentlemen, this is argument by counsel. The evidence that's been introduced is dealing with what occurred on this night. That's what the focus is here, that night." Id.

On appeal, Petitioner alleged that the prosecution's remarks during closing argument amounted to prosecutorial misconduct. The California Court of Appeal rejected such claim, stating as follows:

> When prejudicial prosecutorial misconduct in closing argument was raised as a ground for appellant's motion for a new trial, the prosecutor explained that the objected-to comments referred to the repetitive nature of the conduct as suggesting a preexisting plan or tacit agreement to beat and rob the victims. His remarks, "clearly referred to the fact that after beating Jose Martinez they did the same thing over and over again accounting for all four of the victims who were beaten and robbed."
>
> The trial court denied counsel's motion for a new trial after finding the prosecutor's arguments properly related to the circumstances of the crime. The court ruled that, "words spoken by [the prosecutor] in that context certainly could have been as it relates to the comment over and over again relating to the multiple victims in this case . . . in terms of the lack of any speaking, the actions that were taken, the beatings, going through the pockets, and the like, I certainly don't believe that it rose to any level of prosecutorial misconduct. In addition to that, I would note that when [defense counsel] made his objection the Court in an abundance of caution instructed and advised the jury at that point in time that they were only to be focused on and concerned with the events of the night in question as it relates to their fact finding purpose here.

> We agree with the trial court's analysis of this issue. In viewing the prosecutor's comments in the context of the argument as a whole, it is not reasonably likely that the jury construed or applied the complained-of remarks in an objectionable manner. The state of evidence in this case was that all four of the victims who were attacked by appellant and his cohorts had property taken from them or attempted to be taken from them while they were on the ground being beaten and kicked. During each of the robberies, the victims did not hear any of the suspects communicating with each other or giving each other instructions on what course of action to take next, as they went from one victim to the next in a continuous pattern of beating and robbing. The prosecutor was entitled to argue the evidentiary significance of the repetitive and methodical manner in which the robberies and assaults were carried out to support his theory that there was a preexisting intent to rob the victims. Furthermore, the court's admonition that the jury was to focus only on the night in question ensured that the prosecutor's comments were not interpreted in an improper or erroneous manner.
>
> On this record, we find appellant's claim that cumulative instances of prosecutorial misconduct deprived him of a fair trial is totally without merit.

Fakalata, A116627 at 7-8.

Where a habeas claim of prosecutorial misconduct during closing argument is alleged, the likely effects of the prosecutor's statements are examined "in the context in which they were made to determine 'whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Turner v. Calderon, 281 F.3d 851, 868 (9th Cir. 2002) (quoting Darden, 477 U.S. at 181)). "A court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974). During closing arguments, a prosecutor is allowed a reasonably wide latitude and can argue reasonable inferences from the evidence. Fields v. Brown, 431 F.3d 1186, 1206 (9th Cir. 2005); United States v. Gray, 876 F.2d 1411, 1417 (9th Cir. 1989). However, it is improper for a prosecutor to make statements or inferences to the jury that he knows to be false or has a strong reason to doubt. United States v. Reyes, 577 F.3d 1069, 1077 (9th Cir. 2009).

1    In reviewing the prosecutor's comments to which Petitioner objects, the Court of
2  Appeals concluded that "the prosecutor was entitled to argue the evidentiary significance of
3  the repetitive and methodical manner in which the robberies and assaults were carried out
4  to support his theory that there was a preexisting plan to rob the victims." Fakalata,
5  A116627 at 8. The Court agrees that the gravamen of the prosecutor's comments clearly
6  relate to the night of the crime when the evidence showed that, after the victims had been
7  knocked down to the ground, they were beaten over and over and had property taken from
8  their pockets. However, two of the prosecutor's comments arguably could be interpreted as
9  referring to previous crimes committed by Petitioner and his companions. For instance, the
10 prosecutor's "modus operandi" comment and comparisons to "serial killers or bank robbers
11 who carry out their crimes using the same pattern implied that Petitioner and his
12 companions previously engaged in the same type of conduct that led to the charged
13 offenses. Likewise, the comment that "they do it over and over like they practiced it a
14 thousand times," could be interpreted as inferring that Petitioner had engaged in this
15 conduct many times before. These comments could thus be construed as improper because
16 there was no evidence of previous crimes. However, as will be set forth below, these
17 comments did not infect the trial with unfairness such that the resulting conviction
18 amounted to a denial of due process. See Darden, 477 U.S. at 181.

19    First, the trial court admonished the jury that the evidence focused only on the night
20 in question that the attacks occurred. As stated previously, when a curative instruction is
21 given, it is presumed that the jury follows it and that no due process violation occurred.
22 See Greer, 483 U.S. at 766 n.8. No reason or evidence has been offered to show that the
23 jury was not able to follow the instruction in this instance. Second, there was no pattern of
24 continuing misconduct, see Lincoln, 807 F.2d at 809, because these two comments were
25 made in the context of the prosecutor's lengthy closing argument. See RT 1044-82
26 (closing); 1111-23 (rebuttal). Finally, the weight of the evidence of guilt against Petitioner
27 was strong. See Young, 470 U.S. at 19. Each of the four surviving victims testified
28 essentially to the same events that occurred on the night of the murder. RT at 461-71; 573-

1  98; 711-35; 789-806.  Furthermore, Petitioner's testimony had serious credibility issues
2  because he admitted that, after he was arrested, he told the police an entirely different
3  version of events than he told at trial.  RT at 923-41; 946-47; 950-51; 960; 962.  Finally,
4  blood from the murder victim, Miguel Martinez, was found on Petitioner's jacket cuff and
5  blood from one of the beating victims, Jose Martinez, was found on Petitioner's shoe.  RT
6  at 701-02.

7       The aforementioned factors weigh against a finding that the prosecutor's conduct
8  infected the trial with unfairness such that his conviction was a violation of due process.
9  Furthermore, under Brecht, 507 U.S. at 637, Petitioner has not demonstrated that any error
10 had a substantial and injurious effect on the verdict.  As discussed above, the court cured
11 any error by admonishing the jury that the attorneys' questions were not evidence and that
12 the evidence in question related only to the night the crimes were committed.  In addition,
13 the prosecutor's errors, if any, were only isolated instances and not part of an ongoing
14 pattern; and the prosecutor's case against Petitioner was strong, particularly in light of
15 Petitioner's credibility issues.  Therefore, the Court finds that the California Court of
16 Appeal's denial of this claim was not unreasonable under AEDPA.

17           **3.**    **Cumulative Error**

18      Finally, Petitioner contends that the cumulative effect of the prosecutor's
19 misconduct violated his constitutional right to a fair trial.  After reviewing both claims of
20 prosecutorial misconduct and finding none, the state Court of Appeal denied the claim of
21 cumulative error, stating, "On this record, we find appellant's claim that cumulative
22 instances of prosecutorial misconduct deprived him of a fair trial is totally without merit."
23 Fakalata, A116627 at 8.

24      In some cases, although no single trial error is sufficiently prejudicial to warrant
25 reversal, the cumulative effect of several errors may still prejudice a defendant so much that
26 his conviction must be overturned.  Alcala v. Woodford, 334 F.3d 862, 893-95 (9th Cir.
27 2003).  However, where no single constitutional error exists, nothing can accumulate to the
28 level of a constitutional violation.  Hayes v. Ayers, 632 F.3d 500, 524 (9th Cir. 2011);

Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002).  Similarly, no cumulative error is found where only one error exists.  United States v. Solorio, 669 F.3d 943, 956 (9th Cir. 2012).

Because this Court has found that the state Court of Appeal's rulings on Petitioner's claims were not unreasonable under AEDPA, no constitutional error has been found and, thus, there can be no cumulative error.  Accordingly, the claim based on cumulative error is denied.

## V.   CONCLUSION

The state court's adjudication of Petitioner's prosecutorial misconduct claims did not result in a decision that was contrary to, or an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

A certificate of appealability will not issue.  Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Petitioner may seek a certificate of appealability from the Court of Appeals.  Accordingly,

IT IS HEREBY ORDERED THAT:

1.   The petition for a writ of habeas corpus is DENIED.

2.   A certificate of appealability is DENIED.

3.   The Clerk shall close the file and terminate any pending matters.

IT IS SO ORDERED.

Dated: March 18, 2013

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

SIONE FAKALATA,

       Plaintiff,

  v.

LARRY SMALL et al,

       Defendant.
_____/

Case Number: CV10-00370 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 21, 2013, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Sione Fakalata F-57505
Calipatria State Prison (CSP-CAL)
P.O. Box 5005
Calipatria, CA 92233

Dated: March 21, 2013
                              Richard W. Wieking, Clerk
                              By: Lisa Clark, Deputy Clerk

G:\PRO-SE\SBA\HC.10\Fakalata10-370-REVISED-OrderDenyPetition.docx